**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 16-cv-02938-CMA

DIANE MARTINEZ,

     Plaintiff,

v.

NANCY A. BERRYHILL, acting Commissioner of Social Security,

     Defendant.

---

**ORDER AFFIRMING DENIAL OF PLAINTIFF'S APPLICATION FOR SOCIAL**
**SECURITY DISABILITY BENEFITS AND SUPPLEMENTAL SECURITY INCOME**

---

This matter is before the Court on review of the Social Security Commissioner's decision to deny Plaintiff Diane Martinez's application for disability insurance benefits and supplemental security income.  Jurisdiction is proper under 42 U.S.C. § 405(g).

Plaintiff argues that the administrative law judge's ("ALJ") determination that Plaintiff was not disabled is erroneous because the ALJ improperly weighed various medical opinions and incorrectly assessed Plaintiff's credibility.  (Doc. # 16.)  For the reasons set forth below, the Court affirms the decision of the Commissioner to deny Plaintiff's application for disability insurance benefits and supplemental security income.

# I. BACKGROUND

## A. PROCEDURAL HISTORY

Plaintiff was 32 years old on August 1, 2011, the alleged onset of her disability. (AR at 159.)[1]  Plaintiff had previously worked as a home attendant, a nurse assistant, a cashier, and a sandwich maker.  (AR at 195.)

On April 24, 2013, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and an application for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1382–85.  (AR at 151–62.)  Both applications were initially denied by an administrator at the regional Social Security Office in Alamosa, Colorado, on October 24, 2013.  (AR at 54–55, 67, 80.)  Plaintiff filed a written request for a hearing on December 19, 2013.  (AR at 86.)  Plaintiff has been represented by counsel since January 12, 2015.  *See* (AR at. 113.)

ALJ William Musseman conducted a hearing on June 3, 2015, in Colorado Springs, Colorado.  (AR at 42–53.)  Plaintiff testified that she experienced hand and back pain, was anxious and depressed, found it difficult to focus on tasks, and had knee surgery approximately two weeks prior to the hearing.  (AR at 44–50.)  Bruce Magnuson, a vocational expert, also testified at the hearing.  (AR at 50–53.)  When prompted by the ALJ, the vocational expert stated that a hypothetical individual of the same age, education, and professional experience, and with the same residual functional capacity as Plaintiff, would not be able to do any of Plaintiff's past work.  (AR at 52.)  The vocational expert did, however, identify jobs available in Colorado that such

---

[1] The Court refers and cites to the Administrative Record in this matter, located at Doc. # 10, as "AR."

a hypothetical individual could perform: an assembler of small products; a cleaner/maid; and a routing clerk or mail sorter. (*Id.*)

On June 23, 2015, the ALJ issued a written decision, in which he concluded that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (AR at 26.) The ALJ concluded that Plaintiff "[was] capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*) On July 24, 2015, Plaintiff requested review of the ALJ's decision. (AR at 13–14.) When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner. *See Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff initiated the instant action on December 1, 2016, seeking reversal of the ALJ's decision and remand for a new hearing. (Doc. # 1.)

## B.    RELEVANT MEDICAL EVIDENCE AND OPINIONS

The record is replete with medical records from 2009 through 2013, when Plaintiff frequently presented to emergency rooms, physical therapy offices, and primary care clinics with various complaints of back and foot pain, abdominal pain, skin boils, knee injuries, a wrist fracture, insomnia, and pregnancy-related symptoms. *See* (AR at 247–835.) Throughout this time, Plaintiff's **treating primary care physician** was **Dr. Tammy Gregg**, D.O. On the alleged date of onset of disability, August 1, 2011, Dr. Gregg's office filled out a check-box form for Plaintiff's participation in the Rio Grande County's Colorado Works Program, identify a "healthy pregnancy" as the only "significant finding." (AR at 329–330.) Dr. Gregg subsequently filled out similar forms for Plaintiff in August 2011, January 2012, April 2012, April 2013, March 2014,

November 2014, and April 2015. *E.g.*, (AR at 492–93, 325–26, 388–89, 390–91, 836–37.) Dr. Gregg identified back pain as the only consistent "significant finding" and sometimes checked that Plaintiff was unable to lift various weights, climb stairs and ladder, or push and pull. *See* (*id.*) On January 15, 2015, Dr. Gregg completed a check-box report for Plaintiff's attorney, stating that she had treated Plaintiff for thoracic sprain for four years and that Plaintiff had limited capacities to lift weights, sit for more than two hours at a time, and stand for more than thirty minutes at a time. (AR at 501–03.)

Various images of Plaintiff's lumbar spine substantiate Plaintiff's complaint of back pain. For example, an x-ray in September 2012 showed "[m]ild retrolisthesis of L4 upon L5," but the exam was "otherwise normal." (AR at 370.) An MRI also taken in September 2012 suggested "[m]ild L5-S1 degenerative disc disease and [a] 3mm central subligamentous disc protrusion without nerve root compression." (AR at 317.) Plaintiff's complaints of back pain were "stable"; there was "no radiation of pain," and "symptoms [were] relieved by pain meds/drugs and physical therapy." (AR at 667.)

Relevant here, the ALJ also considered various medical opinions in the record. *See generally* (AR at 24–26.) In September 2013, **state agency non-examining physician Dr. Morris Susman**, M.D., analyzed Plaintiff's medical records and determined that Plaintiff could stand or walk for six hours and sit for six hours in an eight-hour workday. (AR at 76.) Dr. Susman concluded that Plaintiff was not disabled because her conditions "[were] not severe enough to keep [her] from working" though they did result in "some limitations in [her] ability to perform work-related activities." (AR at 81.)

On October 3, 2013, **psychologist Dr. Immaculate Wesley, Psy.D., examined Plaintiff**. (AR at 475–80.) Based on Plaintiff's complaints, Dr. Wesley made diagnostic impressions of "pain disorder associated with both psychological factors and a general medical condition," "major depressive disorder with melancholic features," "posttraumatic stress disorder with panic attacks," and "generalized anxiety disorder." (AR at 479.)

Later in October 2013, **state agency non-examining psychologist Dr. Irwin Matus, Ph.D.**, assessed Plaintiff's records. (AR at 64–66.) He stated that the "few psychiatric observations" in her medical records were "unremarkable," that "[t]here [was] no psychiatric record," and that Plaintiff was "not taking psychotropic medication." (AR at 66.) As to Dr. Wesley's report, Dr. Matus stated that Dr. Wesley based his conclusions on Plaintiff's self-reporting and that Plaintiff's presentation at that appointment "contradict[ed]" Dr. Wesley's opinion that Plaintiff is "extremely impaired as to social interaction." (*Id*.) Dr. Matus concluded that Plaintiff's allegations were "partially credible." (*Id*.) In Dr. Matus's opinion, Plaintiff's "[p]sychiatric condition [did] not preclude all work tasks;" she was able to "perform lower-end, moderately-complex work tasks." (*Id.*)

## II.  STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied the correct legal standards. *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a mere scintilla and is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.  *Id.* at 1262.

The district court is "not to reweigh the evidence or try the issues de novo" but should

"meticulously examine the record as a whole, including anything that may undercut or

detract from the ALJ's findings in order to determine if the substantiality test has been

met."  *Id*.  The court should determine if the substantiality test has been met, regardless

of whether it would have reached a different result based on the record.  *Ellison v.

Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

Second, in addition to the absence of substantial supporting evidence, "[f]ailure

to apply the correct legal standard or to provide this court with a sufficient basis to

determine that appropriate legal principles have been followed is grounds for reversal."

*Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*,

987 F.2d 1482, 1487 (10th Cir. 1993).  "There are specific rules of law that must be

followed in deciding whether evidence is substantial in these disability cases."  *Frey v.

Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal

standard warrants reversal or remand.  "Courts may not reverse and remand for failure

to comply with a regulation without first considering whether the error was harmless."

*Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v.

Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has

"specifically applied [the principle of harmless error] in social security disability cases"

and collecting cases).  Harmless error exists where it is "inconceivable" that a different

administrative conclusion would have been reached absent the error.  *Frank v.*

*Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

## III.  <u>ANALYSIS</u>

### A.  AUTHORITY

"Disability" is defined in the Act as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental

impairment…"  42 U.S.C. § 423(d)(1)(A).  The Act further provides that

> "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial work which exists in the national economy..."

42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden of proving that she is

disabled.  20 C.F.R. § 404.1512(a); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir.

2009).

The Commissioner has established a five-step sequential evaluation process to

determine whether a claimant is disabled, which is codified in 20 C.F.R.

§ 416.920(a)(4):

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. …

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. …

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix

7

1 to subpart P of part 404 of this chapter and meets the duration requirement, we
will find that you are disabled. …

(iv) At the fourth step, we consider our assessment of your residual functional
capacity and your past relevant work. If you can still do your past relevant work,
we will find that you are not disabled. ...

(v) At the fifth and last step, we consider our assessment of your residual
functional capacity and your age, education, and work experience to see if you
can make an adjustment to other work. If you can make an adjustment to other
work, we will find that you are not disabled. If you cannot make an adjustment to
other work, we will find that you are disabled. ...

A finding that a claimant is or is not disabled at any point in the five-step evaluation

process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human*

*Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991).

20 C.F.R. § 404.1527(c) (2013),[2] regarding claims filed before March 27, 2017,

codifies the Commissioner's assessment of medical opinions received into evidence.[3]

20 C.F.R. § 404.1527(c)(2) states a presumption that the Commissioner will give more

weight to the medical opinion of a treating source.  This regulation dictates that the

Commissioner will give a treating source's medical opinion controlling weight if it is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in the record.  20 C.F.R.

§ 404.1527(c) also requires that the Commissioner apply the factors listed in its

paragraphs (c)(2) through (c)(6) to determine the weight to give the treating source's

medical opinion when the Commissioner does not assess it controlling weight.  20

---

[2] 20 C.F.R. § 404.1527 was updated in 2017, effective March 27, 2017.  Because Plaintiff's
action was filed in 2013, the Court uses the prior version of the regulation, which was in place
between 2012 and 2017.  All citations to the regulation in this Order are to the 2013 version of
20 C.F.R. § 404.1527.
[3] 20 C.F.R. § 404.1527(c) and § 416.927(c) are identical substantively, and apply to respective
medical opinion assessments in disability and supplemental disability income determinations.

C.F.R. § 404.1527(c) requires the Commissioner to apply these factors to all medical opinions when the Commissioner does not give a treating source's medical opinion controlling weight. 20 C.F.R. § 404.1527(c)(1) states a presumption that the Commissioner will give a medical opinion of an examining source more weight than the opinion of a source that has not examined the Plaintiff.

The ALJ must both identify the weight accorded to the opinion of a treating source and also explain the basis for said weight. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers both the weight given to the medical opinion and the reasons therefor. *Id*.

## B. THE ALJ'S ANALYSIS

The ALJ applied the five-step sequential evaluation process to determine whether Plaintiff was disabled. *See generally* (AR at 18–26.) At step one, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity since August 1, 2011, the alleged onset date." (AR at 20.) At step two, the ALJ stated that Plaintiff "ha[d] the following severe impairments: lumbar degenerative disc disease; history of right wrist fracture; attentive disorder; [and] anxiety disorder." (*Id*.) He determined that Plaintiff's complaints of elbow and shoulder pain, skin boils, insomnia, abdominal pain, and knee pain were not severe impairments that satisfied the duration requirement. (AR at 20–21.) At step three, the ALJ found that Plaintiff "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments" in the applicable regulations. (AR at 21.)

Relevant here, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light exertional work, allowing for occasional bending, squatting, and kneeling, and frequent handling or fingering, but disallowing climbing of ladders and scaffolds. (AR at 22.) The ALJ explained, "[Plaintiff] requires unskilled work that involves no complex tasks . . . and cannot deal with the general public." (*Id.*) The ALJ weighed the medical records and opinion evidence before him and concluded that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (AR at 23.)

Proceeding to step four, the ALJ stated that Plaintiff was "unable to perform any past relevant work." (AR at 25.) The ALJ determined at step five that Plaintiff was able to perform certain jobs that exist in significant numbers in the national economy. (AR at 25–26.) Accordingly, the ALJ determined Plaintiff was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (AR at 26.)

## C.     PLAINTIFF'S OBJECTIONS

### 1.     Affording Dr. Wesley's opinion no weight

Psychologist Dr. Wesley examined Plaintiff once and diagnosed her with major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder. (AR at 475–80.) Based on her psychological evaluation, Dr. Wesley concluded that Plaintiff's "abilities as related to basic work activities appear[ed] impaired and most likely precluded due to the severity of her depression." (AR at 480.)

In determining Plaintiff's RFC, the ALJ gave no weight to Dr. Wesley's opinion. (AR at 24.) The ALJ first observed that there was no record of psychiatric treatment or medication. (AR at 25.) As to Dr. Wesley's report, the ALJ found that "the body of [her] report d[id] not support the level of impairment assessment." (*Id.*) The ALJ also cited Dr. Matus's review: Dr. Wesley's conclusions were based on Plaintiff's self-reports, and Plaintiff's presentation contradicted Dr. Wesley's opinion that Plaintiff was extremely impaired as to social interaction. (*Id.*) (citing AR at 66.) Though the ALJ concluded that "the evidence [did] not support Dr. Wesley's opinion," the ALJ "limit[ed] [Plaintiff] to unskilled work that involve[d] no dealing with the general public." (*Id.*)

Plaintiff argues that ALJ's four reasons for assigning no weight to Dr. Wesley's opinions were invalid. (Doc. # 16 at 4–8.) The Court addresses each reason in turn and is satisfied that there is substantial supporting evidence for the ALJ's treatment of Dr. Wesley's opinion.

   a.    *"There is no record of psychiatric treatment, and [Plaintiff] does not take psychiatric medication." (AR at 25.)*

The ALJ made this observation about Plaintiff's medical records in explaining why he afforded no weight to Dr. Wesley's opinion and some weight to Dr. Matus's opinion. (AR at 24–25.) The ALJ's observation was objectively accurate at the time of his report. Dr. Wesley herself characterized Plaintiff's mental health treatment as "[n]onexistent." (AR at 476.) Plaintiff also never reported that she was taking psychiatric medication. *See, e.g.*, (AR at 238, 667–69.)

The Court agrees with Plaintiff that, in and of itself, the absence of psychiatric treatment or medication is an insufficient basis for the ALJ to assign no weight to a

medical professional's opinion. *See Grostendorst v. Astrue*, 370 F. App'x 879, 883

(10th Cir. 2010) ("the lack of treatment for an impairment does not necessarily mean

that the impairment does not exist or impose functional limitations."). However, the ALJ

did not rely solely on Plaintiff's lack of mental health treatment to reject Dr. Wesley's

opinion; the ALJ gave multiple reasons for his assessment, some of which are detailed

below. Accordingly, there was no reversible error in the ALJ observing that Plaintiff had

not sought treatment or medication for her mental health challenges.

> *b.* *"[T]he body of Dr. Wesley's report does not support the level of impairment assessed." (AR at 25.)*

The ALJ explained that Dr. Wesley's final opinion was not fully supported by Dr.

Wesley's own notes. (AR at 25.) The ALJ cited Dr. Wesley's observations that

Plaintiff's speech was of normal rate, rhythm, and volume, that her thought processes

were logical and coherent, and that Plaintiff was able to name presidents and spell

simple words backwards correctly. (*Id.*) Upon review of Dr. Wesley's notes, *see* (AR at

475–80), the Court agrees that some of Dr. Wesley's observations do not support her

conclusion that "[s]ocial interaction is extremely impaired as is adaptation," (AR at 480).

In addition to the ALJ's references to Dr. Wesley's opinion, Dr. Wesley also noted that

Plaintiff "arrived promptly for the examination," she was "well groomed in casual and

appropriate attire," her attitude was "positive," "she was cooperative" with Dr. Wesley,

and was "believed to be reliable." (AR at 475.) The Court concludes Dr. Wesley's

observations constituted substantial evidence in support of the ALJ's determination that

Dr. Wesley's report did **not** prove the level of impairment she assessed. The ALJ did

not err in discounting Dr. Wesley's opinion for this reason. *See Castellano v. Sec'y of*

*Health & Human Serv.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (holding that the ALJ's

determination was supported by substantial evidence in the record where the ALJ

discounted a treating physician's opinion that was contradicted by the physician's office

notes.)

<u>c.</u>    <u>*"Dr. Matus noted that Dr. Wesley based the medical source*</u>
         <u>*statement on [Plaintiff's] self-reports."  (AR at 25.)*</u>

Plaintiff is correct that the ALJ erred by considering Dr. Matus's observation that

Dr. Wesley "base[d] [her opinion] on [Plaintiff's] self-reports."  *See* (AR at 25) (citing AR

at 79.)  "The practice of psychology is necessarily dependent, at least in part, on a

patient's subjective statements."  *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir.

2005).  "A psychological opinion need not be based solely on objective 'tests,'" *id.*; it

"may rest either on **observed signs and symptoms** or on psychological tests,"

*Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (emphasis added) (citing

20 C.F.R. Subpart P, App. 1 § 12.00(B)).  Dr. Wesley's opinion was based on both

observed signs and symptoms and on psychological tests.  *See generally* (AR at 475–

80.)  For example, Dr. Wesley observed that Plaintiff "crie[d] throughout the exam. . . .

Affect is extremely depressed and anxious."  (AR at 478.)  She also conducted a

number of psychological tests on Plaintiff and reported their results: "She attempt[ed]

serial 7's, use[d] her fingers and [could] only get to 86.  She was able to spell the world

'world' backward correctly. . . .   She [did] not know what direction the sun rises from,

[did] not know how many weeks are in a year."  (*Id.*)

*Thomas v. Barnhart* is instructive.  There, a consulting psychologist diagnosed

the claimant with major depressive disorder with particular difficulties with memory and

concentration after conducting "psychological tests for intellectual functioning during which [the claimant] was unable to recall items a few minutes after hearing them and was unable to count backwards." 147 F. App'x at 759. The ALJ wholly rejected the psychologist's opinion, stating that the opinion "was based solely on the subjective findings during the evaluation." *Id*. The Tenth Circuit held that the ALJ "did not properly evaluate [the consulting psychologist's] opinion," explaining that "[t]he ALJ cannot reject [the consulting psychologist's] opinion solely for the reason that it was based on [the claimant's] responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the consulting psychologist]." *Id*. at 759–60.

Here, as in *Thomas v. Barnhart*, the ALJ gave no weight to Dr. Wesley's opinion because it was in part based on Plaintiff's responses. This is an invalid reason for rejecting the opinion. The Court analyzes whether this error was harmless in Part III(D) below.

<u>d.</u>    *"Dr. Matus noted . . . that [Plaintiff's] presentation contradicted Dr. Wesley's opinion that [Plaintiff] is extremely impaired as to social interaction." (AR at 25.)*

The final fact the ALJ addressed in his RFC analysis was that Dr. Matus wrote that Plaintiff's "presentation contradicted Dr. Wesley's opinion that [Plaintiff] is extremely impaired as to social interaction." (AR at 25) (citing AR at 79). Plaintiff contends that this was in error because the ALJ did not explain why he accepted this portion of Dr. Matus's opinion. (Doc. # 16 at 6.) In the Court's view, this contention is nearly identical to Plaintiff's argument that the ALJ erred in rejecting Dr. Wesley's opinion on grounds that the body of her report did not support her opinion that Plaintiff's social functioning is

14

extremely impaired. The Court addressed that argument above in Part III(C)(1)(b). As to the ALJ's weighting of Dr. Matus's opinion, Plaintiff more fully addresses that issue in a separate argument, *see* (*id.* at 8–12), which the Court addresses next in Part III(C)(2). It is therefore unnecessary to address Plaintiff's contention here.

The Court is not persuaded by Plaintiff's exhortation "to note that the ALJ's RFC follows Dr. Wesley's social limitation, at least with respect to interactions with the general public." (Doc. # 16 at 7.) Plaintiff finds it "ironic that the ALJ stated that Dr. Wesley's opinion is not supported by the evidence, but nevertheless found that [P]laintiff cannot interact with the general public." (*Id.*) The Court sees no such irony. Rather, in the Court's view, the ALJ tempered the weight he gave to Dr. Matus's opinion, **in Plaintiff's favor**, by concluding that Plaintiff was best suited for work "that does not require interaction with the general public." (AR at 25.) As in *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012), "[t]he ALJ could have been more explicit in tying this mitigating gesture to evidence in the record, but [there is] no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably in this way unless the ALJ provides an explanation for extending the claimant such a benefit." The ALJ did not err in softening Dr. Matus's opinion for Plaintiff's benefit. *See id*.

## 2. Giving Dr. Matus's opinion some weight

Non-examining consulting psychologist Dr. Matus analyzed Plaintiff's medical records and conducted a Mental Residual Functional Capacity Assessment ("MRFCA") in late October 2013. (AR at 64–66); *see also* (AR at 77–79.) In a series of check-box

ratings, Dr. Matus assessed Plaintiff as "moderately limited" with regard to: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (AR at 64–65.) Dr. Matus indicated that Plaintiff did not have social interaction or adaptation limitations.[4] (AR at 65–66.) In his narrative explanation, Dr. Matus concluded that Plaintiff's allegations were partially credible, and her mental health did not preclude all work tasks. (AR at 66.)

At step three of the sequential evaluation, the ALJ stated that Plaintiff had moderate difficulties in social functioning and explained that "[i]n this regard, [he] [gave] some weight to the Psychiatric Review Technique assessment of the State agency psychological consultant, [Dr. Matus]." (AR at 22.) However, the ALJ found that Plaintiff was "somewhat more impaired than Dr. Matus assessed, as [the ALJ] conclude[d] that [Plaintiff] [was] moderately impaired in social functioning." (*Id.*) Later, in determining Plaintiff's RFC, the ALJ again gave "some weight" to Dr. Matus's opinion "that [Plaintiff] can perform lower-end, moderately complex work tasks." (AR at 24.)

### *a.* *The ALJ's reasons for assigning Dr. Matus's opinion "some weight"*

Plaintiff asserts that "[t]he first problem is that the ALJ did not weigh Dr. Matus's opinion by reference to the regulatory weighing factors, and . . . did not state any reason

---

[4] Plaintiff asserts that Dr. Matus concluded that Plaintiff had "mild limitations in activities of daily living and social functioning," citing to the administrative record at page 74. (Doc. # 16 at 8.) That is incorrect. The page Plaintiff cites to, page 74, was completed by Dr. Susman, not by Dr. Matus. *See* (AR at 74–77.)

for affording Dr. Matus's opinion any weight at all." (Doc. # 16 at 9.) Plaintiff also

argues that Dr. Matus's opinion "does not deserve any inherent weight." (*Id.* at 10.)

As the Court explained above, it is the Commissioner's duty to consider all

medical opinions in the record and to apply six specific factors in determining what

weight to give any medical opinion.[5] 20 C.F.R. §§ 404.1527(c), 416.927(c); *Keyes-

Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). However, the regulations also

explicitly authorize the Commissioner to consult with federal or state agency medical or

psychological consultants in connection with ALJ hearings and Appeals Council

reviews. 20 C.F.R. § 404.1527(e). Two regulations are relevant to an ALJ's

consideration of agency medical or psychological consultants:

(i)     Administrative law judges are not bound by any findings made by State
        agency medical or psychological consultants, or other program physicians
        or psychologists. State agency medical and psychological consultants and
        other program physicians, psychologists, and other medical specialists are
        **highly qualified physicians, psychologists, and other medical
        specialists who are also experts in Social Security disability
        evaluation**. Therefore, administrative law judges **must consider** findings
        and other opinions of State agency medical and psychological consultants
        and other program physicians, psychologists, and other medical
        specialists as opinion evidence, except for the ultimate determination
        about whether you are disabled (see § 404.1512(b)(8)).

(ii)    When an administrative law judge considers findings of a State agency
        medical or psychological consultant or other program physician,
        psychologist, or other medical specialist, the administrative law judge will
        **evaluate the findings using the relevant factors in paragraphs (a)
        through (d) of this section**, such as the consultant's medical specialty
        and expertise in our rules, the supporting evidence in the case record,

---

[5] These factors are: (1) examining relationship; (2) treatment relationship, including the length of
the treatment relationship and the frequency of examination, and the nature and extent of the
treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other
factors. 20 C.F.R. § 404.1527(c)(1)–(6); *Goatcher v. U.S. Dep't of Health & Human Serv.*, 52
F.3d 288, 290 (10th Cir. 1995).

> supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge **must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant** or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 404.1527(e)(2)(i)–(ii) (emphases added).

The Court agrees with Plaintiff that the ALJ did not sufficiently explain why he afforded Dr. Matus's opinion "some weight." The ALJ did not explicitly address the six factors of 20 C.F.R. § 404.1527(c)(1)–(6), though he implied that Dr. Matus did not examine Plaintiff, see 20 C.F.R. § 404.1527(c)(1), and that Dr. Matus's opinion was well-supported by and consistent with other medical evidence in the record, *see* 20 C.F.R. § 404.1527(c)(3), (4). *See* (AR at 22–25.) However, the Court is not yet persuaded that the ALJ's failure to plainly explain why he gave "some weight" to Dr. Matus's opinion warrants reversal. The Court addresses whether the absence of an explicit explanation of weighting was harmless in Part III(D).

The Court rejects Plaintiff's assertion that Dr. Matus's opinion does not deserve any inherent weight. (Doc. # 16 at 10.) The regulations require the Commissioner to consider opinions and other findings of federal and state agency medical or psychological consultants," and explain that these medical and psychological consultants "are **highly qualified** physicians, psychologists, and other medical specialists who are also **experts in Social Security disability evaluation**." C.F.R. § 404.1527(e)(2)(i). Thus, the regulations suggest that the opinions of agency medical and psychological consultants have inherent integrity. *See Goodman v. Colvin*, 233 F.

Supp. 3d 88, 106 (D.D.C. 2017) (affirming an ALJ's decision to assign state agency

consultants' assessments "great weight" in part "because of the integrity of the reports

themselves"); *Ostronski v. Chater*, 94 F.3d 413, 417 (8th Cir. 1996) (stating that an ALJ

is "entitled to rely on the opinions of reviewing physicians when considering whether the

claimant meets requirements of a listed impartment.").

*b.* *The ALJ's treatment of Dr. Matus's "moderate impairment" finding*

Plaintiff argues that the ALJ also erred by "failing to mention and assess" Dr.

Matus's answer in the MRFCA that Plaintiff was "[m]oderately limited" in her ability to

complete a normal workday and workweek.  (Doc. # 16 at 11–12) (citing AR at 65.)

The Court disagrees.  Dr. Matus indicated that Plaintiff was moderately limited

with regard to completing a normal workday and workweek in Section I of the MRFCA.

(AR at 64–65.)  As the Tenth Circuit explained in *Carver v. Colvin*:

> The MRFCA itself states that Section I "is for recording summary conclusions
> derived from the evidence in the file" and directs that "[d]etailed explanation of
> the degree of limitation for each category ... is to be recorded in Section III."  This
> tracks several provisions of the Social Security Administration's Program
> Operations Manual Systems ("POMS").
>
> The POMS provides that Section III of the MRFCA, not Section I, is for recording
> a medical consultant's formal mental RFC assessment, and that **adjudicators
> are to use the Section III narrative as the RFC assessment**:  "The purpose of
> section I ... is chiefly to have a worksheet to ensure that the psychiatrist or
> psychologist has considered each of these pertinent mental activities and the
> claimant's or beneficiary's degree of limitation.... **It is the narrative** written by the
> psychiatrist or psychologist in Section III ... **that adjudicators are to use as the
> assessment of RFC.**"

600 F. App'x 616, 618–19 (10th Cir. 2015) (quoting POMS DI 25020.010 B.1).  In this

case, the ALJ properly relied on Dr. Matus's Section III narrative—not the summary

conclusions in Section I of the MRFCA— in his assessment of Plaintiff's RFC.  *See* (AR

at 25.)  Moreover, Dr. Matus's Section III narrative adequately explains "the conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work setting."  *See* POMS DI 24510.060 B.4.b.  Dr. Matus's Section III statement that Plaintiff is able to perform "unskilled, light work with appropriate procedural and manipulative limitations" are the functional manifestations of the moderate limitations he selected in Section I.  *See Carver*, 600 F. App'x at 619 (rejecting that claimant's argument that the ALJ's finding did not account for moderate limitations in Section I of a MRFCA).  The Court therefore rejects Plaintiff's second argument about the ALJ's treatment about Dr. Matus's opinion.

### <u>3.</u>      <u>Assigning very little weight to Dr. Gregg's opinions</u>

Dr. Gregg was Plaintiff's treating primary care physician during the relevant time period.  Between August 2011 and April 2015, Dr. Gregg periodically filled out check-box forms for Plaintiff's participation in the local works program; she consistently identified only back pain as a "significant finding" on these forms.  *E.g.*, (AR at 492–93, 325–26, 388–89, 390–91, 836–37.)  Less frequently, she indicated that Plaintiff was unable to engage in certain physical movements.  *See* (*id.*)  On January 15, 2015, Dr. Gregg completed a check-box report for Plaintiff's attorney, stating that Plaintiff had limited capacities to lift weights, sit for more than two hours at a time, and stand for more than thirty minutes at a time.  (AR at 501–03.)

The ALJ gave "very little weight" to the forms completed by Dr. Gregg when he assessed Plaintiff's RFC.  (AR at 24.)  He explained that "[t]he limitations reflected in [Dr. Gregg's forms], considered together, [were] not consistent with the record as a

20

whole and [were] not supported by objective findings."[6]  (*Id.*)  The ALJ pointed to two examples in which Dr. Gregg avowed that Plaintiff had physical limitations but did not cite objective evidence supportive of the physical limitations.  (*Id.*)  The ALJ then overviewed Plaintiff's medical records applicable to her complaints of back pain and wrist pain.  (*Id.*)

Plaintiff asserts that the ALJ "did not have valid reasons for assigning very little weight to Dr. Gregg's restrictions," rejecting the ALJ's explanation for doing so as "too general to be valid."  (Doc. # 16 at 12.)  The ALJ erred in three ways, Plaintiff argues: first, "there is no logical reason why a thoracic sprain and back pain could not cause Dr. Gregg's restrictions;" and second, "the ALJ did not explain why he concluded that a thoracic sprain and back pain is inconsistent with the restrictions Dr. Gregg imposed;" and third, "the ALJ did not explain how or why he interpreted the record as a whole as being inconsistent with Dr. Gregg's restrictions."  (*Id.* at 12–13.)  Plaintiff also emphasizes the presumption that a treating doctor's is entitled to deference under C.F.R. § 404.1527(c)(2).  (*Id.* at 13–14.)

The Court concludes that the ALJ's decision to assign very little weight to Dr. Gregg's opinions was supported by substantial evidence.  The ALJ himself cited such evidence.  For example, imaging of Plaintiff's thoracic spine and cervical spine was consistently unremarkable, and Plaintiff's back symptoms were stable and could be treated with pain medication and physical therapy.  (AR at 316, 374, 546, 667.) Additionally, other medical professionals, such as Dr. Susman, concluded that Plaintiff's

---

[6] Accordingly, the opinions did not receive controlling weight. *See* C.F.R. § 404.1527(c)(2).

exertional limitations were far less strict than Dr. Gregg indicated.  (AR at 63.)  In the Court's view, this evidence "is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's treatment of Dr. Gregg's opinions and his assessment of Plaintiff's RFC.  *See Grogan*, 399 F.3d at 1261. The ALJ's assignment of very little weight to Dr. Gregg's opinions on the check-box forms was thus supported by substantial evidence.  *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (affirming an ALJ's determination that a treating physician's opinion did not merit controlling weight where the physician's notes "simply recite[d]" the claimant's complaints, provided little analysis of the claimant's physical limitations, and were inconsistent with other medical record evidence).

### 4.      Treating Dr. Susman's opinion with some weight

The state agency's consulting physician, Dr. Susman, completed a Physical Residual Functional Capacity Assessment on the basis of the medical record.  (AR at 63–64.)  Dr. Susman explained that Plaintiff was "partial[ly]" credible because she overstated her functional limitations.  (AR at 64.)  Dr. Susman gave no weight to Dr. Gregg's assessment form completed on April 3, 2013, in which Dr. Gross stated that Plaintiff could work zero hours per day, (AR at 485–86), because the assessment was "a marked overstatement of limitations of functional capacities."  (AR at 64.)  Dr. Susman concluded that Plaintiff could stand or walk for six hours and sit for six hours in a normal eight-hour workday, could perform postural activities at least occasionally, and did not have limitations of her fine manipulation skills.  (AR at 63–64.)

The ALJ gave "some weight" to the opinion of Dr. Susman.  (AR at 23.)  He explained that Dr. Susman's opinion was "generally consistent with residual functional capacity" that the ALJ had identified.  (*Id.*)

The Court agrees with Plaintiff that the ALJ erred in "not stat[ing] any reason for assigning more weight to Dr. Sussman's [sic] opinion than he assigned to Dr. Gregg's opinion."  (Doc. # 16 at 14.)  Because the ALJ did not give Dr. Gregg's opinion controlling weight, the ALJ was required to apply the factors identified in 20 C.F.R. § 404.1527(c)(2)–(6) to Dr. Susman's opinion and "explain in the decision the weight given to the opinions of a State agency medical . . . consultant," like Dr. Susman.  20 C.F.R. § 404.1527(e)(2)(ii).  Moreover, the sole reason the ALJ gave for assigning some weight to Dr. Susman's opinion—that the opinion was "generally consistent with the residual functional capacity [he, the ALJ] assessed," (AR at 23)—was also problematic. It suggests that the ALJ considered Dr. Susman's report **after** the ALJ had determined Plaintiff's RFC.  This was a reversal of the correct order of analysis.  The regulations clearly state that the Commissioner "will assess [RFC] **based on all** of the relevant medical and other evidence. . . . [**B]efore** [the Commissioner] make[s] a determination . . . , [the Commissioner is] responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination."  20 C.F.R. § 404.1545(a)(3) (emphases added).  In Part III(D) below, the Court analyzes whether this and the few other missteps in the ALJ's analysis demand reversal.

**5.** **Finding that Plaintiff's statements were not entirely credible**

At the beginning of his RFC analysis, the ALJ summarized the applicable

analytical framework and previewed his RFC conclusion:

> After careful consideration of the evidence, [he, the ALJ] finds that [Plaintiff's] medically determinable impairments [severe back pain, wrist pain, depression, panic attacks, and poor memory] could reasonably be expected to cause the alleged symptoms; however, **[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision**.

(AR at 23) (emphasis added).  The ALJ then addressed specific evidence and opinions

in Plaintiff's medical record.  *See* (AR at 23–25.)

Plaintiff's final argument is that because the ALJ did not "explain why he did not

find [P]laintiff's testimony credible" and "never linked the credibility finding to specific

evidence in the record," the ALJ's assessment of her credibility was erroneous.  (Doc.

# 16 at 16–17.)  The ALJ's "mere summary," she asserts, was not inadequate.  (*Id*. at

17.)  The Court disagrees.

"Credibility determinations are peculiarly the province of the finder of fact, and

[this Court] will not upset such determinations when supported by substantial evidence."

*Johnson v. Berryhill*, 679 F. App'x 682, 687 (10th Cir. 2017) (quoting *Newbold v. Colvin*,

718 F.3d 1257, 1267 (10th Cir. 2013)); *see Perbeck v. Astrue*, 487 F. Supp. 2d 1267,

1271 (D. Kan. 2007) ("the court will usually defer to an ALJ's credibility determination.").

However, "[f]indings as to credibility should be closely and affirmatively linked to

substantial evidence and not just a conclusion in the guide of findings."  *Huston v.*

*Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).  An ALJ "'need not make a formalistic

factor-by-factor recitation of the evidence' pertaining to a claimant's credibility," but "he

should consider such factors as [the claimant's] daily activities, reactions to treatment, 'persistent attempts to find relief for her pain, . . . willingness to try any treatment prescribed, . . . and regular contact with a doctor.'" *Johnson v. Berryhill*, 679 F. App'x at 687 (quoting *Keyes-Zachary*, 695 F.3d at 1167).

Throughout his analysis, the ALJ cited medical evidence that undermined the credibility of Plaintiff's complaints about the intensity, persistence, and limiting effects of her alleged back pain, right wrist pain, depression, panic attacks, and poor memory. *See generally* (AR at 20–26.) For example, with regard to the limiting effects of Plaintiff's symptoms, the ALJ cited Plaintiff's own Function Report to support his finding:

> [T]he evidence shows that [Plaintiff] is independent with personal care, prepares meals and shops in stores. [Plaintiff] reports no problems getting along with family, friends, neighbors or others, and she gets along "good" with authority figures. Although she reports that she can pay attention only five minutes, [Plaintiff] spends time watching television, trying to read to her son, and riding a bike, which she tries to do daily. She is also able to pay bills and count change.

(AR at 22) (citing AR at 207–14.) With regard to the intensity and persistence of Plaintiff's complaints, the ALJ noted that various imaging of her back and right wrist did not reveal significant abnormalities and that Plaintiff had not sought treatment or medication for her mental impairments. (AR at 24–25.) And as the Court already explained, the ALJ cited various medical opinions that implicitly called into question the credibility of Plaintiff's complaints.

Thus, the Court's review of the record convinces it that substantial evidence supports the ALJ's credibility determination and that the correct legal standards were applied. *See Newbold*, 718 F.3d at 1268; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("the ALJ did not simply recite the general factors he considered, he also

stated what specific evidence he relied on in determining that [the] plaintiff's allegations of disabling pain were not credible.").

## D.    HARMLESS ERROR

As the Court explained at the outset, the principle of harmless error applies in Social Security appeals.  *Allen*, 357 F.3d at 1145.  The Tenth Circuit, for example, has held that some technical errors were "minor enough not to undermine confidence in the determination of th[e] case," *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993), and that an "ALJ's conduct, although improper, d[id] not require reversal" because the procedural error had not "altered the evidence before the ALJ," *Glass v. Shalala*, 43 F.3d 1392, 1397 (10th Cir. 1994).

The Court has already identified three improprieties in the ALJ's analysis of Plaintiff's applications for Social Security benefits:

1)    One of the reasons the ALJ assigned Dr. Wesley's opinion no weight—that Dr. Wesley's opinion was based on Plaintiff's self-reports—was invalid;
2)    The ALJ did not sufficiently explain why he afforded Dr. Matus's opinion some weight; and
3)    The ALJ failed to explain why he assigned some weight to Dr. Susman's opinion.

These minor errors were harmless.  As to the first error, the ALJ had three other, valid reasons for assigning Dr. Wesley's opinion no weight.

With regard to the second and third errors, where, like here, "the ALJ does not need to reject or weigh [this opinion] evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."  *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (citing *Keyes-Zachary*, 695 F.3d at 1162).  *Keyes-Zachary* is

instructive; in that case, the claimant argued that the ALJ erred by discussing but not expressly explaining the weighting of a consulting physician's report. 695 F.3d at 1163. The Tenth Circuit held that the alleged error was harmless because the ALJ's "RFC . . . [was] generally consistent with [the consulting physician's] findings," and "[t]here [was] no reason to believe that a further . . . weighing of this opinion could advance [the claimant's] claim of disability." *Id*. The same rationale applies here.

Absent these three minor errors, it is still inconceivable that a different administrative conclusion would have been reached. *See Frank*, 326 F.3d at 622. The Court therefore concludes any errors in the ALJ's analysis were harmless.

## IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Final Decision of the Commissioner of Social Security.

DATED: March 19, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge